UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

MATTHEW BRUCE HINTZE &           CASE NO.: 12-10462-KKS

                                                                      CHAPTER: 7

LARINA K. HINTZE,

    Debtors.
_____/

THERESA M. BENDER,

    Plaintiff,

      v.

                                                           ADV. PRO. NO.: 14-01001-KKS

CHRISTOPHER M. JAMES,

    Defendant.
_____/

**<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 29)</u>**

THIS MATTER came before the Court for hearing on November 4, 2014, on the Plaintiff's Motion for Summary Judgment (the "Motion," Doc. 29) and Defendant's Opposition to the Motion (Doc. 42). Having reviewed the pleadings and heard argument of counsel, the Court finds that no material issues of fact remain and that the Plaintiff is entitled to Summary Judgment in her favor as a matter of law.

Factual History

The material facts are not in dispute. Matthew Bruce Hintze and Larina K. Hintze (the "Debtors") delivered a promissory note in the principal amount of $375,000 to Christopher James, the Defendant, on November 10, 2010.[1] The promissory note included the following language: "As security for the payment of the principal, interest and other sums due under this Note, Maker

---

[1] Doc. 1, at 3; Doc. 18, at 2.

hereby grants to Holder a security interest in all of Maker's assets."[2] About nineteen months later, on June 11, 2012, a UCC-1 Financing Statement was recorded with the Florida Secretary of State listing the Defendant as the secured party and the Debtors as the obligors.[3] The financing statement described the collateral as: "All personal property owned by the Debtors, including cash or cash equivalents, stocks, bonds, mutual funds, certificates of deposit, household goods and furnishings, automobiles, and water craft."[4]

The Debtors filed their Chapter 7 petition on November 1, 2012.[5] Before filing bankruptcy one of the Debtors, Matthew Hintze, was the Managing Member and owner of a business called TutoringZone, LC ("TZ I").[6] By agreement effective as of June 4, 2012, TZ I transferred its intellectual property to TutoringZone II, LLC ("TZ II"), an entity formed, and apparently owned, by the Defendant.[7]

The Debtors listed the Defendant on their Schedule D as a secured creditor with a "UCC-1 – Security Interest" on "[a]ll personal property of the Debtors."[8] On their Amended Schedule B, in answer to question 13 they listed, among other things, "100% interest in TutoringZone, LC" as an asset.[9] In September of 2013 the Trustee, here the Plaintiff, filed and served a notice of intent to sell the "[n]on-exempt equity" in "Debtors' 100% membership interest in TutoringZone, LC" for $10,000.00.[10] Claiming a perfected security interest in this asset, the Defendant objected to the proposed sale and demanded the right to credit bid; he further complained that the Trustee had

---

[2] Doc. 1, at 3; Doc. 18, at 2. Debtors are the "Maker" and the Defendant is the "Holder."
[3] Doc. 1, at 3; Doc. 1-1, Exhibit 1, at 5; Doc. 18, at 2. A copy of this UCC-1 is attached to the Proof of Claim filed by the Defendant.
[4] Doc. 1, at 3; Doc. 1-1, Exhibit 1, at 5; Doc. 18, at 2. The UCC-1 was prepared and submitted by Cynthia Frenchman, who has been described in other litigation as the Defendant's assistant. The UCC-1 was filed from Napa, California, and is not signed by the Debtors. Doc. 1-1, Exhibit 1, at 5.
[5] Doc. 1, at 1; Doc. 18, at 1.
[6] Doc. 1, at 4; Doc. 18, at 2; Doc. 29-5, at 4; *In re Hintze*, No. 12-10462-KKS (Bankr. N.D. Fla. Nov. 1, 2012), ECF No. 1, Schedule B.
[7] Doc. 29-1, at 4-5.
[8] Doc. 1, at 2-3; Doc. 18, at 2.
[9] *In re Hintze*, No. 12-10462-KKS (Bankr. N.D. Fla. May 31, 2013), ECF No. 110, at 5.
[10] *In re Hintze*, No. 12-10462-KKS (Bankr. N.D. Fla. Sept. 23, 2013), ECF No. 155 (emphasis in original). The purchaser was "TZ Acquisition, LLC," which is owned by one or more parties adverse to the Debtors.

improperly rejected his $25,000 credit bid.[11] In response, the Trustee objected to the Defendant's proof of claim.[12] After the Defendant moved to strike the objection, claiming that the Trustee could only attempt to invalidate his security interest via an adversary proceeding,[13] the Plaintiff commenced this action.[14]

The Plaintiff requests summary judgment declaring that the Defendant does not have a valid security interest in the Debtors' assets, including the 100% membership interest in TZ I. She alleges that under Florida law the collateral description of "all of Maker's assets" is legally insufficient to have created a security interest.[15] The Defendant's response is that summary judgment is not appropriate because the intent of the parties governs, insisting that the Court must take parol evidence on the meaning of this collateral description.[16] The Defendant also argues that the Plaintiff has stepped into the Debtors' shoes for purposes of this adversary proceeding, and so therefore has waived her right to challenge the validity of the security interest or, alternatively, is estopped from doing so.[17]

## Summary Judgment Standard

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056. A court may grant summary judgment where

---

[11] Doc. 1, at 2; Doc. 18, at 1; *In re Hintze*, No. 12-10462-KKS (Bankr. N.D. Fla. Oct. 14, 2013), ECF No. 172. The Defendant's assertion of a right to credit bid was erroneous because the Trustee's proposed sale was "subject to," and not free and clear of, liens. *See* 11 U.S.C. § 363(f), (k) (2012).
[12] Doc. 1, at 4; Doc. 18, at 2.
[13] Doc. 1, at 4; Doc. 18, at 2.
[14] Doc. 1, at 4; Doc. 18, at 2.
[15] The Debtors signed two promissory notes in favor of the Defendant: one in the amount of $100,000 dated May 12, 2011, that was due and payable on the sixth month anniversary of that note: the other in the amount of $375,000 dated November 10, 2010, that was due and payable on the "one year anniversary" of the date of the note. Only the $375,000 note contains any "security" language whatsoever. Doc. 1-1, Exhibit 1, Proof of Claim 22-1 of Christopher M. James, at 7; Doc. 29-2.
[16] The "evidence" would consist of the testimony of the Debtors and the Defendant, coupled with the Schedules filed by the Debtors in their Chapter 7 case.
[17] At the hearing, the Defendant asserted that this Court cannot grant the relief the Plaintiff seeks—a summary judgment that renders his security interest unenforceable—because Fla. Stat. § 679.1081 does not contain a consequence for non-compliance. This assertion is partially correct: the consequence is not built into Fla. Stat. § 679.1081, it is contained in § 679.2031.

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] The moving party has the burden of establishing the right to summary judgment.[19] Conclusory allegations by either party, without specific supporting facts, have no probative value.[20] Facts are material if they "might affect the outcome of the suit under the governing law" and disputes over material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[21] The facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[22] When a defendant raises an affirmative defense, as opposed to a denial of an allegation, he bears the initial burden of proving the applicability of the defense for the purpose of creating an issue of fact to oppose summary judgment.[23]

The undisputed facts in this case show that the Defendant does not have, and has never had, a valid security interest in the Debtors' assets. The Defendant has not proven that his affirmative defenses apply to bar summary judgment for the Plaintiff. No material issues of fact remain that might affect this outcome under the governing law.

## Statutory Analysis

Under Section 679.2031 of Florida's Uniform Commercial Code ("UCC"), a security interest attaches and is enforceable against the debtor and third parties if 1) the secured party has given value; 2) the debtor has rights in the collateral; and 3) there is an authenticated security

---

[18] Fed. R. Civ. P. 56(c).
[19] *In re Pearlman,* 515 B.R. 887, 893 (Bankr. M.D. Fla. 2014) (citing *Fitzpatrick v. Schlitz* (*In re Schlitz*), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986)).
[20] *Id.* at 893 n.29 (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).
[21] *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[22] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)); *see also In re Pearlman*, 515 B.R. at 893.
[23] *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990).

agreement that describes the collateral.[24]  Florida Statutes § 679.1081 governs sufficiency of descriptions of collateral for creation of a security interest; its requirement is clear: "a description of personal or real property is sufficient, whether or not it is specific, if it *reasonably identifies* what is described."[25]  With limited exceptions, a description reasonably identifies the collateral if it contains the UCC's defined categories, quantity, computational or allocational formulas or procedures, or any other method "if the identity of the collateral is *objectively determinable*."[26]  The combination of Fla. Stat. §§ 679.1081(3) and 679.2031 makes it clear that because the Defendant and Debtors described the collateral as "all of Maker's assets," the promissory note was insufficient to create a security interest in favor of the Defendant that attached and is enforceable against the Debtor or the Plaintiff.  Fla. Stat. §§ 679.1081(3) provides:

> A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral for purposes of the security agreement.[27]

The Defendant argues that language in one sentence of Official Comment 2 to Fla. Stat. § 679.1081 should alter this outcome: "The purpose of requiring a description of collateral in a security agreement under Section 9-203 is evidentiary."[28]  Focusing on the word "evidentiary," the Defendant asserts that a super-generic description like the one here does not, by itself, render a security agreement invalid or unenforceable.  The fallacy of this argument is apparent upon a reading of all of Comment 2, rather than the single sentence selected by the Defendant.  Comment 2 to § 679.1081, in its entirety, states:

> The purpose of requiring a description of collateral in a security agreement under Section [679.2031] is evidentiary. The test of sufficiency of a description under this section, as under former Section 9-110, is that the description do the job assigned to it: *make possible the identification of the collateral described*. This section

---

[24] Fla. Stat. § 679.2031 (2014); *see also* James J. White & Robert S. Summers, *Uniform Commercial Code* §§ 23-2 to 23-3 (6th ed. 2010).  The only record proof that the Defendant gave value for the security interest is in the Defendant's affidavit.  Doc. 42-1, at 1.  The Plaintiff has not contested the Defendant's testimony on this point.
[25] *Id.* § 679.1081(1) (emphasis added).
[26] *Id.* § 679.1081(2) (emphasis added).  Section 679.1081 sets forth exceptions to this general rule not applicable here.
[27] *Id.* § 679.1081(3).
[28] *Id.* § 679.1081 cmt. 2.

5

rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called "serial number" test).[29]

Official Comment 2 serves its purpose, which is to clarify. It does not even imply that a description such as "all of Maker's assets" is sufficient under the UCC, or that such a description makes identification of the collateral possible.

Under § 679.2031, an enforceable security interest is created *only if* all elements are present, including an authenticated security agreement *with a description of the collateral*.[30] If the description is explicitly insufficient under § 679.1081, it is axiomatic that the description cannot meet the requirements of § 679.2031. Because the Defendant does not have an authenticated security agreement with a description of the collateral that is enforceable under Florida's UCC, the third requirement for creation of a security interest is missing. Because no security interest was created, the Defendant has no security interest to enforce.

### Parol Evidence

Despite the clarity of Fla. Stat. § 679.1081(3), the Defendant maintains that the first sentence of Official Comment 2 requires this Court to permit him to introduce parol evidence to prove that he and the Debtors intended for him to have a security interest in the Debtors' personal property, including TZ I. He cites a number of cases in support of this argument. But none of those cases involved a super-generic description of collateral. Rather, each case cited by the Defendant involved a collateral description that was sufficient under the UCC's minimal requirements.

In *Richardson v. Myers*, a lease granted the landlord a security interest in "all the goods, chattels, fixtures and equipment" of the lessee.[31] When the tenant defaulted on her rent, the

---

[29] *Id.* (emphasis added).
[30] *Id.* § 679.2031.
[31] *Richardson v. Myers*, 143 So. 157, 158 (Fla. 1932). "Goods," "fixtures," and "equipment" are now defined terms in the UCC. Fla. Stat. § 679.1021(1)(gg), (oo), (rr).

landlord sued.[32] In sustaining the landlord's right to foreclose the security interest, the Florida Supreme Court held that the landlord had a contractual security interest on "*designated classes* of property" and that "[a]s between the parties such description is sufficient, since the chattels referred to may with reasonable certainty be ascertained by the description given."[33] In *Crews v. First Union National Bank*, the security agreement referred to a commitment letter that described the collateral as "furniture, fixtures, equipment and inventory."[34] The court in *Crews* ruled that this description was "sufficient to fulfill the reasonable identification standard" contained in the Florida Statutes.[35] In *Pizzano v. Direct Capital Corp.*, the court enforced a security agreement that described the collateral as "goods."[36] In *O & G Leasing, LLC v. First Security Bank*, a description in a security agreement that listed and enumerated five specific oil drilling rigs was held sufficient.[37] None of the cases cited by the Defendant support a ruling that the description "all of Maker's assets" is adequate, nor do they support allowing him to introduce parol evidence to explain what was meant by this description.[38]

A case argued by the Defendant at the hearing, *Ford v. Feldman,* provides no support for allowing Defendant to introduce parol evidence under the facts here. In *Ford v. Feldman,* John Wilson convinced a medical doctor to invest in a joint venture for importing "Tegue" lizard skins from Paraguay, tanning them, and then selling them at a profit; the joint venture business was incorporated and became the debtor.[39] The debtor borrowed money from a third party.[40] In

---

[32] *Richardson*, 143 So. at 158.
[33] *Id.* at 159 (emphasis added).
[34] *Crews v. First Union Nat'l Bank of Fla.* (*In re Michelle's Hallmark Cards & Gifts, Inc.*), 219 B.R. 316, 318 (Bankr. M.D. Fla. 1998).
[35] *Id.* at 320.
[36] *Pizzano v. Direct Capital Corp.* (*In re Pizzano*), 439 B.R. 445, 448 (Bankr. W.D. Mich. 2010).
[37] *O & G Leasing, LLC v. First Security Bank* (*In re O & G Leasing, LLC*), 456 B.R. 652, 663-64 (Bankr. S.D. Miss. 2011).
[38] The Defendant also cites *Cook v. Theme Park Ventures, Inc.*, 633 So.2d 468 (Fla. 5th Dist. Ct. App. 1994), but that case does not apply to support his argument, either. In *Cook,* the parties exchanged a letter signed by the debtor, enclosed with which were an unsigned security agreement and financing statement. *Id.* at 471. The issue was whether those documents created a binding security agreement at all. *Id.*
[39] *Ford v. Feldman, M.D., P.A.* (*In re Fla. Bay Trading Co.*), 177 B.R. 374, 378-81 (Bankr. M.D. Fla. 1994).
[40] *Id.* at 379.

conjunction with that loan the debtor executed a promissory note, security agreement and financing statement; the signed security agreement referenced an exhibit that set forth lot numbers, pack numbers, tanner identification numbers, and the number of skins but did not specify that the skins were Tegue lizard skins.[41] The debtor went out of business, defaulted on its obligations and filed bankruptcy.[42] The bankruptcy trustee challenged the security interest on the basis that the collateral description was insufficient: it did not specify what *type* of lizard skins.[43] The court held that the description was adequate to describe the collateral pledged because it was "without any doubt . . . that all parties to the security agreement . . . knew that the Debtor's one and only asset which was intended to be the collateral were [sic] the Tegue lizard skins."[44]

Unlike here, the collateral description in *Ford v. Feldman* was very detailed, and the loan documents were executed contemporaneously. Against this factual backdrop the bankruptcy court recognized that by requiring an adequate description of collateral the UCC discourages parol evidence:

> [The Florida UCC] provides that for the purpose of the Statute any description of personal property is sufficient, whether or not it is specific, as long as it *reasonably identifies* what is described.
> . . . .
> These formal requisites to enforceability are in the nature of a Statute of Frauds. It is designed to document the intent of the parties concerning the creation of the security interest and to *eliminate parol evidence to prove the intent*.[45]

The First Circuit Court of Appeals, analyzing the Massachusetts equivalent of Fla. Stat. § 679.1081, ruled similarly:

> The draftsmen of the UCC ascribed two purposes to [the] requirement [for a formal security agreement]. One purpose was evidentiary, to prevent disputes as to precisely which items of property are covered by a secured interest. . . . . The

---

[41] *Id.*
[42] *Id.* at 377-78. The doctor eventually became the assignee and secured party. He had personally guaranteed the corporate debtor's obligations, so when he paid off on his guaranty he took an assignment of the underlying debt and the security interest. *Id.* at 379-80.
[43] *Id.* at 380.
[44] In fact, the debtor's only inventory consisted of 63,082 Tegue lizard skins, which were the entire foundation of the importing, tanning, and selling scheme. *Id.* at 378, 381.
[45] *Id.* at 381 (emphasis added).

8

> second purpose of the signed-writing requirement is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations.
>
> . . . .
>
> A writing or writings, regardless of label, which *adequately describes the collateral,* carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it.[46]

It is difficult, if not impossible, to imagine how an independent third party could ascertain what was to be included in "all of Maker's assets" without parol evidence. Undoubtedly, that is why the UCC discards such a description as insufficient. At minimum, parol evidence would be needed to prove what the "Maker," here the Debtors, owned as of the date the document was signed. This is contrary to the purpose and effect of the UCC. The Defendant seeks to introduce parol evidence to *create*, ex post facto, a legally sufficient description of the collateral, not to clarify what assets were covered by a description that was legally sufficient to begin with. This the Defendant cannot do.

### The Composite Document Rule

Defendant argues in the alternative that his security interest is valid and enforceable because the collateral description of "all of Maker's assets" in the promissory note should be read in conjunction with the unsigned financing statement filed more than a year and a half later. Although it is true that under certain circumstances multiple documents may be combined to create a valid security interest under the composite document rule,[47] case law does not support the application of the composite document rule under these facts.

In *In re Numeric Corp.*, the court found that a creditor held a valid security interest based upon a corporate resolution, promissory note and financing statement prepared on the same day; all of those documents reconfirmed the parties' collective belief and intent that the debtor had

---

[46] *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973) (emphasis added) (citations omitted).
[47] *Dickason v. Marine Nat'l Bank of Naples, N.A.*, 898 So. 2d 1170, 1174 (Fla. 2d Dist. Ct. App. 2005); *see also Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645, 648 (11th Cir. 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract.").

granted a security interest in specific items listed in a bill of sale delivered the prior month.[48] In *In re Cantu*, the loan agreement did not contain a description of the collateral, but the "funds advance voucher" issued the same day a) contained a description of the collateral, and b) provided that its terms were incorporated into the loan agreement.[49] In *Northwestern Bank v. Cortner*, the guaranty and a loan agreement were executed five days apart; the court read the documents together so that language in the loan agreement impacted the interpretation of the guaranty.[50] In *Dickason v. Marine National Bank of Naples, N.A.*, the note explicitly referenced a financing statement executed within four days.[51] In *In re Nickerson & Nickerson, Inc.*, copies of financing statements were attached to the security agreement, which specified that the collateral was as listed in the "attached schedules."[52] In *Crews v. First Union National*,[53] the security agreement referenced an existing commitment letter that specified the collateral for the loan,[54] and a promissory note detailed the terms of the loan and granted a security interest in the "goods or property being purchased."[55] The Defendant has cited no case in which a court applied the composite document rule to salvage a super-generic collateral description, or where loan documents were executed more than eighteen months apart.

## Affirmative Defenses - Waiver and Estoppel

The Defendant asserts that because he and the Debtors understood what was meant by "all of Maker's assets," the Plaintiff has waived any argument to the contrary; or alternatively is estopped from asserting it. If the Plaintiff were pursuing this action standing in the Debtors' shoes,

---

[48] *In re Numeric Corp.*, 485 F.2d 1328, 1329-30, 1332 (1st Cir. 1973) (a security agreement had apparently been prepared but was never executed).
[49] *Dietz v. Hormel Emps. Credit Union* (*In re Cantu*), 238 B.R. 796, 797-800 (B.A.P. 8th Cir. 1999).
[50] *Nw. Bank v. Cortner*, 275 So. 2d 317, 318-20 (Fla. 2d Dist. Ct. App. 1973).
[51] *Dickason*, 898 So. 2d at 1170-71, 1173-74 (The Note contained this language: "**2. Security for this Note.** This note is secured by, inter alia, UCC-1 Financing Statements on furniture, fixtures and equipment, and all business assets and Assignment of the Life Insurance policies for [the obligors]." (emphasis in original)).
[52] *In re Nickerson & Nickerson, Inc.*, 452 F.2d 56, 56-57 (8th Cir. 1971).
[53] *Crews v. First Union Nat'l Bank of Fla., N.A.* (*In re Michelle's Hallmark Cards & Gifts, Inc.*), 219 B.R. 316 (Bankr. M.D. Fla. 1998).
[54] *Id.* at 320.
[55] *Id.*

10

as the Defendant alleges, this argument might prevail. But the Plaintiff is pursuing this action using the status conveyed upon her automatically under the Bankruptcy Code, so the Defendant's reliance on these affirmative defenses is misplaced.

The Bankruptcy Code grants the Plaintiff more than avoidance powers: the Code grants the Plaintiff *status*.[56] Under 11 U.S.C. § 544(a), the Plaintiff has:

> the rights . . . of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains . . . a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien . . . .[57]

This status is not something that the Plaintiff has to assert; it is conferred as a matter of law upon filing the Chapter 7 petition.[58]

Outside of bankruptcy, the Debtors (as obligors on the note) and their judgment creditors, if any, would have standing to attack the Defendant's security interest. If the Debtors were successful in such an attack they could theoretically keep the asset for themselves, free and clear of any interest of the Defendant.[59] If a judgment creditor were successful, its judgment lien could move up to first lien position as to the collateral at issue; here, the membership interests in TZ I.[60] The Debtors' bankruptcy filing does not alter the fact that there are two different ways to attack the Defendant's security interest: one standing in the Debtors' shoes and the other standing in the shoes of a hypothetical judgment creditor. The Plaintiff is pursuing the latter; for that reason, she is not subject to equitable defenses of waiver and estoppel.[61]

---

[56] 11 U.S.C. § 544 (2014).
[57] *Id.*
[58] *In re Mariano*, 339 B.R. 344, 347 (Bankr. D.N.J. 2006); *see also In re Wey*, 827 F.2d 140, 143 (7th Cir. 1987) (the "strong-arm clause," gives the trustee the status of a hypothetical judicial lien creditor from the date of the filing of the bankruptcy petition). "The strong-arm clause is the ultimate Article 9 enforcer." Barkley Clark & Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 6.02(1)(a) (3d ed. 2011).
[59] Of course, if the Debtors were attacking the Defendant's security interest they would, indeed, have to overcome the waiver and estoppel defenses.
[60] In this example, the judgment creditor would not only move up to first lien position; it would be the only party with a lien on the collateral since the Defendant's promissory note did not create an enforceable security interest.
[61] The Defendant argues that the Plaintiff Trustee cannot use her § 544 status because of language in a prior order that states: "The Plaintiff's causes of action are in the nature of declaratory judgment actions, not causes of action provided by Chapter 5 of the Bankruptcy Code." Doc. 17, at 1. This argument is misplaced. The Plaintiff pleaded her case against the Defendant as a declaratory action, and not an avoidance action, because, as Plaintiff puts it, "[t]o avoid a

11

The Defendant argues that certain language from *Crews*[62] prohibits a third party such as the Plaintiff from successfully attacking the sufficiency of a collateral description. Citing to *Ford v. Feldman*,[63] the court in *Crews* wrote: "if the parties to the agreement understand what collateral was pledged, the security interest created by the agreement cannot be challenged on the basis of an insufficient description of the collateral."[64] Relying on this language, the Defendant urges that because he and the Debtors "clearly understood . . . what was pledged as security," no one else may attack his alleged security interest. That this argument is wrong is evidenced by the language in *Ford v. Feldman* on which the *Crews* court relied:

> While it is clear that the security agreement *must furnish an adequate description of the collateral pledged*, if it is clearly understood by the parties what was pledged as security and the extent of the security interest created such security agreement cannot be challenged by third parties on the basis that the description of the collateral lacks specificity.[65]

One must read the cited language in a vacuum and out of context in order to agree with the Defendant's interpretation.

The Defendant's reliance on two other cases, *In re Edwards* and *In re Gosman,* is also misplaced, but for a different reason.[66] Each of those cases involved a trustee's pursuit of a pre-petition cause of action that became an asset of the bankruptcy estate by virtue of § 541; neither

---

lien, there must first be a lien to be avoided." Doc. 7, at 1-2. Declaratory actions under Florida Statutes section 86.011 are not causes of action provided by Chapter 5 of the Bankruptcy Code, but are actions that the Plaintiff bankruptcy trustee may pursue using her status under 11 U.S.C. § 544. *See* Fed. R. Bankr. P. 7001(9).

[62] *Crews v. First Union Nat'l Bank of Fla., N.A.* (*In re Michelle's Hallmark Cards & Gifts, Inc.*), 219 B.R. 316 (Bankr. M.D. Fla. 1998).

[63] *Ford v. Feldman, M.D., P.A.* (*In re Fla. Bay Trading Co.*), 177 B.R. 374 (Bankr. M.D. Fla. 1994).

[64] *Crews*, 219 B.R. at 320 (citing *Ford*, 177 B.R. at 381).

[65] *Ford*, 177 B.R. at 381 (emphasis added). Since the quoted language from *Crews* relies on *Ford v. Feldman* for support, *Crews* should not be given a broader interpretation. Because creation of a security interest requires an adequate description of collateral, the best interpretation of the quoted language from *Crews* and *Ford v. Feldman*, then, would require a statutorily-approved description before a third party could not challenge the specificity of that description. Fla. Stat. §§ 679.1081, 679.2031 (2014).

[66] *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards* (*In re Edwards*), 437 F.3d 1145 (11th Cir. 2006); *Luzinski v. Peabody & Arnold LLP* (*In re Gosman*), 382 B.R. 826 (S.D. Fla. 2007).

involved causes of action that a Chapter 7 Trustee could pursue simply by using the status conferred by § 544.[67]

## Conclusion

The description of "all of Maker's assets," in the promissory note, without more, was insufficient to create an enforceable security interest. There is no support for combining that language with a financing statement recorded nineteen months later. Without a sufficient description of the collateral, no valid security interest (or lien) was ever created. Since no lien was created, there is no lien to avoid. The Plaintiff's only course of action was to seek a declaratory judgment, which she did using her status under § 544. The Defendant has not met his burden of proving that the affirmative defenses of estoppel and waiver apply. There being no disputed material issues of law or fact, for the reasons stated it is

ORDERED:

1. Plaintiff's Motion for Summary Judgment (Doc. 29) is GRANTED.
2. Counsel for Plaintiff is directed to prepare and submit a Final Summary Judgment consistent with this Order.

DONE AND ORDERED in Tallahassee, Florida, this  11th  day of February, 2015.

KAREN K. SPECIE
United States Bankruptcy Judge

cc: All interested parties

Counsel for Plaintiff is directed to serve a copy of this Order on interested parties and file a certificate of service within three (3) days of entry of this Order.

---

[67] *Edwards*, 437 F.3d at 1148-49; *Luzinski*, 382 B.R. at 837 (S.D. Fla. 2007). In *In re Edwards* the trustee pursuing the pre-petition claims was not a Chapter 7 trustee at all, and so did not have § 544 status. *Edwards*, 437 F.3d at 1149.